UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UTICA MUTUAL INSURANCE COMPANY,

                    Plaintiff,

v.                                                6:12-CV-194
                                                  (DNH/TWD)

INA REINSURANCE COMPANY,
N/K/A R&Q REINSURANCE COMPANY,

                    Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HUNTON & WILLIAMS LLP<br>Counsel for Plaintiff<br>1751 Pinnacle Drive<br>Suite 1700<br>McLean, Virginia 22102 | WALTER J. ANDREWS, ESQ.<br>SYED S. AHMAD, ESQ.<br>PATRICK M. MCDERMOTT, ESQ. |
| CHADBOURNE & PARKE LLP<br>Counsel for Defendant<br>1200 New Hampshire Avenue, NW<br>Washington, DC 20036 | JOHN F. FINNEGAN, ESQ.<br>ROBERT A. SCHWINGER, ESQ.<br>THOMAS J. HALL, ESQ.<br>MICHAEL A. SAMALIN, ESQ. |

THÉRÈSE WILEY DANCKS , United States Magistrate Judge

## DECISION AND ORDER

      Plaintiff Utica Mutual Insurance Company ("Utica") has sued Defendant INA Reinsurance Company n/k/a/ R&Q Reinsurance Company ("R&Q") for breach of a confidentiality order and agreements, tortious interference with contract, and declaratory and injunctive relief.[1]  (Dkt. No. 1.)  The suit arises out of R&Q's counsel Chadbourne & Parke

___

[1] Plaintiff filed this lawsuit in the United States District Court for the Southern District of New York.  (Dkt. No. 1.)  The Honorable Alvin K. Hellerstein, United States District Court Judge transferred the case to this Court on January 19, 2012.  (Dkt. No. 32.)

LLP's alleged use of confidential information obtained on behalf of R&Q for the benefit of an unrelated client of the firm – Fireman's Fund Insurance Company ("FFIC") – in connection with reinsurance litigation pending between Utica and FFIC in this Court. (Dkt. No. 10 at 8.) Utica has moved for a blanket order sealing all filings in this action to the extent they "(a) contain, relate to, reference, or are based on confidential information under the Confidentiality Order entered in the pending arbitration between [Utica and R&Q] or under confidentiality agreements between Utica and R&Q, including information subject to the attorney-client privilege and the work product doctrine; or (b) attach (or otherwise reference) submissions filed under seal in an action styled Utica Mutual Insurance Company v. Fireman's Fund Insurance Company, No. 6:09-cv-00853-DHN-GHL (N.D.N.Y.)"[2] ("FFIC Litigation"). (Dkt. No. 5 at 1.) R&Q opposes Utica's motion. (Dkt. No. 21.) For the reasons set forth herein, Utica's motion is granted in part and denied in part.

### I.   BACKGROUND

**A.   The Parties' Confidentiality Agreements and the Arbitration Panel Order**

R&Q entered into contracts with Utica obligating the reinsurer to provide Utica with reinsurance with respect to insurance policies that Utica had issued to Goulds Pumps, Inc. ("Goulds"). (Dkt. No. 1 at ¶ 1.) In October of 2008, the parties entered into a confidentiality agreement in connection with R&Q's audit of Utica's reinsurance claims involving the Goulds policies. *Id.* at ¶¶ 24-25; (Dkt. No. 6-1). R&Q acknowledged in the confidentiality agreement that a breach of its obligations under the agreement "could result in irreparable harm to Utica,"

---

[2] Utica has moved separately for permission to file portions of its reply filings in support of its motion for a preliminary injunction under seal. (Dkt. No. 24.) That motion is decided herein.

and that Utica would be entitled "to seek immediate injunctive relief, in addition to any other remedies that it may have." (Dkt. No. 6-1 at ¶ 3.)

Utica commenced arbitration against R&Q in November of 2009 when the parties could not reach an agreement on Utica's reinsurance claims. (Dkt. No. 1, ¶ 19.) Prior to commencement of the arbitration, the parties entered into an agreement entitled "Arbitration Protocol," which contained a confidentiality provision that by its terms was to be superseded by a confidentiality agreement negotiated by the parties and entered as an order by the arbitration panel. *Id*. at ¶¶ 26-27; (Dkt. No. 6-2 at ¶ C). The negotiated confidentiality agreement was executed in October of 2009 and thereafter entered as a confidentiality order in the arbitration. (Dkt. Nos.1at ¶¶ 28-29 and 6-3.) The confidentiality agreement and order provide that all "Arbitration Information," very broadly defined, is to be kept confidential during and after the conclusion of the arbitration. (Dkt. No. 6-3 at ¶ 2.) The parties recognized that serious injury could result to a party and its business if the other party were to breach the agreement and agreed that "... all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity."[3] *Id.* at ¶ 6.

---

[3] In Paragraph 3 of the confidentiality agreement and order, Utica and R&Q agreed that:

> Disclosure of Arbitration Information may be made: ... (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award.... In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval and to the extent permitted by law, that all submissions of Arbitration Information to a court shall be sealed. (Dkt. No. 6-3.)

B.    **The FFIC Litigation**

FFIC also entered into reinsurance contracts with Utica with respect to policies Utica had issued to Goulds. (Dkt. No. 1 at ¶ 3.) Utica and FFIC were unable to agree on Utica's claims under the FFIC reinsurance contracts, and Utica sued FFIC for the alleged breach of the reinsurance certificates, breach by FFIC of its duty of utmost good faith and fair dealing to Utica, and declaratory relief arising out of FFIC's failure to pay Utica's reinsurance billings. (No. 6:09-CV-00853, Dkt. No. 32 at ¶¶ 40-53.)

The parties to the FFIC Litigation entered into a Stipulated Protective Order Regarding Confidential Items and Information, which was So Ordered on July 20, 2011 by now retired Magistrate Judge George H. Lowe ("FFIC protective order").[4] (Dkt. No. 6-5.) "Confidential Items" is defined in the FFIC protective order to mean "confidential or proprietary documents that, in connection with the claims that are the subject of this litigation, [Utica] ... has provided,

---

    R&Q opposes Utica's sealing motion in this case, despite having agreed that all submissions of Arbitration Information to a court are to be sealed to the extent allowed by law and the court, and in spite of having itself requested a blanket sealing order based on the same confidentiality agreement and order in an earlier proceeding between the parties in which Utica sought disqualification of R&Q's counsel in the reinsurance arbitration. (Dkt. No. 23-1.) *See Application of Utica Mutual Insurance Company v. INA Reinsurance Company n/k/a R&Q Reinsurance Company*, No. 10-CV-2669 (AKH/FM) (S.D.N.Y.). Judge Hellerstein denied the request and ordered that filings in the case, with the exception of those produced for *in camera* review and those protected by the attorney-client and work product privileges, be unsealed. (No. 10-CV-2669, Dkt. Nos. 17 and 26.) The Second Circuit affirmed in *Application of Utica Mutual Ins. Co. v. INA Reinsurance Co. n/k/a R&Q Reinsurance Co.*, No. 10-4164-cv, ___ Fed.Appx. ___, 2012 WL 858531 at *1, 2012 U.S. App. LEXIS 5419 at *3 (2d Cir. March 15, 2012). The docket in No. 10-CV-2669 (S.D.N.Y.) shows that no documents that were filed under seal have as yet been unsealed. Therefore, this Court has no information concerning the content of those documents.

   [4] Upon Magistrate Judge Lowe's retirement on February 9, 2012, pending non-dispositive motions in this case and the FFIC Litigation were referred to me.

or may provide to [FFIC] ... during discovery in this litigation, or that [FFIC] ... may provide to [Utica] ... during discovery in this litigation." *Id.* at ¶ 1.A.

Under the terms of the FFIC protective order, Confidential Items, which are only to be filed "when required in connection with motions under the Federal Rules of Civil Procedure 26, 37, and 56, or other matters pending before the Court ... shall be filed under seal and shall remain sealed while in the office of the Clerk, unless ordered unsealed by the Court." *Id.* at ¶ 6. The FFIC protective order specifically provides that:

> To resolve a privilege dispute related to certain emails that Utica Mutual provided to Fireman's Fund, Utica Mutual and Fireman's Fund anticipate filing briefs with the court related to that dispute. Filings and other submissions related to the privilege dispute shall be treated as a "Confidential Item."[5]  *Id.*

C.   **R&Q's Alleged Breach of the Confidentiality Agreements and Order**

Utica has alleged in its complaint that:

> 39.    R&Q and its agents, including its attorneys, improperly disclosed certain information which was required to be kept confidential under the October 2009 Confidentiality Agreement, which was entered as an Order by the Arbitration Panel and the Arbitration Protocol – and, in addition or alternatively – the October 2008 confidentiality agreement.
>
> 40.    The improper disclosure by R&Q and its agents, including its attorneys, of confidential information, in violation of the confidentiality obligations, was to counsel for FFIC and to the Court in the FFIC litigation.

(Dkt. No. 1 at ¶¶ 39-40.)

---

[5] The referenced privilege dispute culminated in Utica's September 2011 motion for a protective order in the FFIC Litigation seeking the return of privileged emails that had allegedly been inadvertently produced to FFIC. That motion is being opposed by FFIC. (Dkt. No. 17 at 2-3, 64-68.)

The allegations in the complaint and the parties' submissions on motions filed in this case, while short on detail, are sufficient to establish for purposes of Utica's sealing motions that its claims against R&Q arise in large part out of its counsel Chadbourne & Parke LLP's alleged disclosure to FFIC and to the Court in the FFIC Litigation of confidential information related to the privileged emails that are the subject of the dispute referenced in paragraph 6 of the FFIC protective order.[6]

## II.  DISCUSSION

### A.  The Public Right of Access to Judicial Records

The public has a well established common law right of access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-90 (1978).[7] "Although there is a

---

[6] In Utica's memorandum of law in opposition to R&Q's unsuccessful motion to dismiss, Plaintiff characterized this case as "aris[ing] out of Chadbourne & Parke LLP using confidential information the firm obtained on behalf of one client – R&Q Reinsurance Company – for the benefit of another unrelated firm client – Fireman's Fund Insurance Company." (Dkt. No. 29 at 6.) In its memorandum of law in support of its motion for a preliminary injunction, Utica has described the alleged improper disclosures by R&Q in the following manner:

> In October 2011, Utica learned that R&Q violated the Confidentiality Order and confidentiality agreements by disclosing confidential information. The improper disclosure of confidential information by R&Q was to FFIC and to the United States District Court for the Northern District of New York in filings submitted under seal. (Dkt. No. 10 at 8.)

In his affidavit in opposition to Utica's pending motion for a preliminary injunction, R&Q counsel John E. Finnegan identified the filings as including his affidavit and a memorandum of law submitted in opposition to Utica's motion for a protective order in the FFIC Litigation. (Dkt. No. 20 at ¶ 5.) Correspondence from counsel to the court in the FFIC Litigation regarding Utica's motion for a protective order sheds additional light on the confidentiality dispute that by all accounts led to the commencement of this action. (Dkt. No. 17 at 67-70.)

[7] The public also has a "qualified first amendment right to ... access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citation

presumption favoring access to judicial records, *see Nixon v. Warner Communications*, 435 U.S. at 602 ..., the fact that a document is a judicial record does not mean that access to it cannot be restricted." *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) ("*Amodeo I*"). A party seeking to seal judicial records has the burden of demonstrating that the records should be sealed. *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997), *cert. denied*, 522 U.S. 1049 (1998). "[W]hen a district court ... considers a request to seal a file or to approve or take other protective measures, it enjoys considerable discretion in determining whether good cause exists." *Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000). The task of the district courts is to "weigh[ ] the interests advanced by the parties in light of the public interest and the duty of the courts." *Amodeo I*, 44 F.3d at 146, quoting *Nixon*, 435 U.S. at 602.

In *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), the Second Circuit articulated a three-step analysis for determining whether documents should be filed under seal.[8] Under *Lugosch*, a court must first determine whether the presumption of access attaches to the document. *Id.* at 119. A presumption of access attaches only to "judicial documents." *Amodeo I*, 44 F.3d at 145. "The mere filing of a paper or document with the court is insufficient to render it a judicial document subject to the right of public access." *Id.* A judicial document is one

---

and internal quotation marks omitted). Whether or not the public and press should have a qualified First Amendment right has been decided under both an "experience and logic" approach and an approach involving consideration of the extent to which the documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (internal citation and quotation marks omitted). In *Lugosch*, the Court noted that Second Circuit precedent indicates that there is a qualified First Amendment right of access to documents submitted on summary judgment motions. *Id.* at 121.

[8] The three-step test in *Lugosch* was derived largely from the Court's earlier decisions in *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) and *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

"relevant to the performance of the judicial function and useful in the judicial process."[9]  *Id.*

If the court determines that an item sought to be filed under seal is a judicial document, the second step under *Lugosch* requires a determination of the weight to be given to the presumption of access.  *Lugosch*, 435 F.3d at 119.  In *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"), the Second Circuit explained that:

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.  Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*Id.*  A strong presumption attaches "where documents are used to determine litigants' substantive legal rights." *Lugosch*, 435 F.3d at 121.  The Second Circuit has held that the public has an "especially strong" right of access to evidence introduced at trial.  *Amodeo II*, 71 F.3d at 1049.  The Court has also ruled consistently that "documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment" and that they "should not remain under seal absent the most compelling reasons." *Id.*  (citation and internal quotation marks omitted).

Motions for a preliminary injunction have been labeled dispositive by district courts in the Second Circuit. *See Meaney v. Village of Johnson City,* No. 3:10-CV-00070, 2010 WL

---

[9] "[R]elevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies ...." *Lugosch*, 435 F.3d at 122, quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987).

1633371 at *8, 2010 U.S. Dist. LEXIS 39275 at *25-26 (N.D.N.Y. 2010) (motions for a preliminary injunction are dispositive); *Odom v. Senkowski*, No. 96-CV-554, 1997 WL 458450 at *1, 1997 U.S. Dist. LEXIS 11780 at *3 (N.D.N.Y. 1997) (same). District courts in the Ninth Circuit have found preliminary injunction motions to be dispositive for purposes of sealing court records and, therefore, subject to the Ninth Circuit "compelling reasons" standard for sealing papers on dispositive motions.[10] *See, e.g., Dish Network, L.L.C. v. Sonicview USA, Inc.*, No. 09-CV-1553, 2009 WL 2579052 at *1, 2009 U.S. Dist. LEXIS 63429 at *17 (S.D. Cal. 2009) ("An order on a preliminary injunction directly addresses the merits of the action and seeks injunctive relief before trial ... [and is] recognized as dispositive in other contexts .... Accordingly, Plaintiff's motion for a preliminary injunction is dispositive for purposes of sealing court records."); *Selling Source, LLC v. Red River Ventures, LLC*, No. 2:09-CV-01491, 2011 WL 1630338 at *5, 2011 U.S. Dist. LEXIS 49664, at *15-16 (D. Nev. 2011) (following the reasoning in *Dish Network* in finding that "requests for preliminary injunctive relief should be treated as dispositive motions for purposes of sealing court records.").

The third step involves balancing competing considerations against the weighted presumption of access. *Lugosch*, 435 F.3d at 119. The common law right of access to judicial records is balanced against "counterveiling factors [that] include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotations omitted). A qualified First Amendment right of access can be overcome by specific on the record findings showing that sealing is "essential to preserve

---

[10] *See Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1180 (9th Cir. 2006) (the strongest presumption of public access applies to dispositive motions thus requiring parties to show "compelling reasons" for sealing).

higher values and is narrowly tailored to serve that interest." *Id*. at 120, quoting *In re New York Times*, 828 F.2d 110, 116 (2d Cir. 1987).

**B.     Analysis of Plaintiff's Request to Seal**

    **1.     Judicial Documents**

Under *Lugosch*, I am tasked first with determining whether submissions that Utica seeks to have filed under seal are judicial documents. The parties' filings on Utica's motion for a preliminary injunction clearly are judicial documents carrying a presumption of public access because they are intended to be taken into account in deciding the motion. *See Amodeo I*, 44 F.3d at 145. However, Plaintiff's sealing request is not limited to those papers. Rather, Utica has elected to seek a blanket order directing the sealing of all yet to be filed information and documents that fall within its exceedingly broad request. Given the broad brushed manner in which Utica has elected to proceed, I am compelled to assume for purposes of the *Lugosch* analysis that all as yet unfiled documents that fall within Plaintiff's request are judicial documents that carry with them a presumption of public access.

    **2.     The Weight of the Presumption of Public Access**

The second step of the *Lugosch* analysis requires the Court to determine the weight to be given to the presumption of access. Since Utica's motion for a preliminary injunction is a dispositive motion which "directly addresses the merits of the action and seeks injunctive relief before trial," *Dish Network*, 2009 WL 2579052 at *1, I find that there is a strong presumption of public access. As with step-one of the *Lugosch* analysis, in order to adequately protect the public's right of access to future filings in this case, I must start with the general assumption that there will be a strong presumption of public access as to all documents filed by the parties that

come within Utica's sealing request.[11]

### 3. Balancing the Presumption of Public Access and Utica's Counterveiling Factors and Considering the Need to Preserve "Higher Values"

#### a. The Parties' Confidentiality Agreements and Order Entered by the Arbitration Panel Do not Alone Provide Valid Grounds for Utica's Sealing Application

Utica is asking this Court to order the sealing of all of the parties' filings in this case to the extent they "(a) contain, relate to, reference, or are based on confidential information under the Confidentiality Order entered in the pending arbitration between [Utica and R&Q] or under confidentiality agreements between Utica and R&Q, including information subject to the attorney-client privilege and the work product doctrine." (Dkt. No. 5 at 1.) The scope of the request is sufficiently broad to be akin to a request to keep the entire file in the suit under seal.[12] The confidentiality order entered in the arbitration alone defines the information to be kept confidential by the parties to include "... all briefs, depositions and hearing transcripts generated in the course of the

arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and

---

[11] If, during the course of the litigation, the parties have a significant need to file confidential documents which clearly are not judicial documents or can, in good faith, be said to have "only a negligible role in the performance of Article III duties," *United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir. 1995), thereby significantly lessening the weight of the presumption, they would not be precluded by this Order from making a sealing application specifically limited to those documents.

[12] The Judicial Conference of the United States, in Preliminary Report Judicial Conference Actions 3 (Sept. 13, 2011) approved a policy of sealing case files only where "required by statute or rule or justified by a showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives ... so that sealing an entire case file is a last resort."

information exchanged in connection with the proceedings." (Dkt. No. 6-4 at 2.)

Utica claims that its far reaching request is justified by its right of access to the courts, Goulds' privacy interests, Utica and R&Q's privacy interests as reflected in their various confidentiality agreements, the federal policy favoring arbitration, the arbitration panel's confidentiality order, and attorney-client and attorney work product privileges.  However, Plaintiff has fallen far short in satisfying its burden of justifying the sealing of documents on the broad scale requested in this lawsuit.[13]  *See DiRussa*, 121 F.3d at 826 (the party seeking to seal judicial records has the burden of demonstrating that the documents should be sealed).

Utica's assertion that its right of access to the courts justifies the grant of the far reaching sealing order requested by it in this case is without merit.  The parties' recognition in the confidentiality agreement and order that a breach could cause serious injury and entitle the non-breaching party to seek "a restraining order, injunction or other equitable relief" (Dkt. No. 6-3 at ¶ 2), reveals an awareness on their parts that they might well end up in court.  While Utica and R&Q agreed in the confidentiality order that they would endeavor to file documents that were designated as "Arbitration Information" under seal in any judicial proceedings, they clearly realized that their ability to do so would be "subject to court approval and to the extent permitted by law." (Dkt. No. 6-3 at ¶ 3.)   The law grants a presumption of public access to judicial documents, *Lugosch*, 435 F.3d at 119-120, and the confidentiality order in the arbitration does not entitle Utica to " ... transfer the privileges of [its] private arbitration to a public judicial

---

[13]  It is quite possible that many of the documents that Utica seeks to have sealed in this case have already been unsealed by Judge Hellerstein in *Application of Utica Mutual*, No. 10-CV-2669 (AKH/FM) (S.D.N.Y. 2010), and already lost their confidential status under the parties' various confidentiality agreements and the order entered in the arbitration.

forum."[14]  *Standard Chartered Bank International (Americas) Ltd. v. Calvo*, 757 F.Supp.2d 258, 260 (S.D.N.Y. 2010).

Further, the "mere existence of a confidentiality agreement ... does not demonstrate that sealing is necessary." *Church Ins. Co. v. ACE Property & Cas. Ins. Co.*, No. 10-CV-698, 2010 WL 3958791 at \*\*3, 2010 U.S. Dist. LEXIS 109774 at \*8 (S.D.N.Y. 2010), quoting *Mutual Marine Office, Inc. v. Transfercom Ltd.*, No. 08-CV-10367, 2009 WL 1025965 at \*5, 2009 U.S. Dist. LEXIS 31739 at \*13 (S.D.N.Y. 2009).[15]  *See also Sony Ericsson Mobile Communications AB v. Delta Electronics Public Company Ltd.*, No. 09-CV-995, 2009 WL 959639 at \*2, 2009

---

[14]  Utica's reliance on *S.E.C. v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) in support of its claim that it would be manifestly unfair for the court to modify the confidentiality order entered in the arbitration is misplaced. (Dkt. No. 7 at 16-17.)  Before a court can issue a confidentiality or protective order that provides for sealing of filed documents, it must determine that "good cause exists to overcome the presumption of open access to documents filed in ... court[ ]." *Gellar*, 212 F.3d at 738.  Only after that finding has been made and a protective order has been issued, is it considered to be "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *TheStreet.com*, 273 F.3d at 230.  An arbitration panel is not required to consider any right of public access before entering a confidentiality order.  In fact, as Utica has acknowledged, confidentiality is considered one of the largest benefits of arbitration.  *Id*. at 15.  *See ITT Indus., Inc. v. Rayonier, Inc.*, No. 05-CV-4322, 2005 WL 1744988 at \*2 (S.D.N.Y. 2005) ("One of the principal reasons people agree to arbitrate rather than litigate, it to maintain confidentiality.").

[15]  Utica relies heavily on *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997), *cert. denied*, 522 U.S. 1049 (1998), a Second Circuit decision affirming an order sealing the entire file in an arbitration confirmation proceeding in which the arbitrators' failure to award attorney's fees was challenged.  The Court in *DiRussa* did not hold that confidentiality agreements entered into in connection with an arbitration, or confidentiality orders entered by the arbitrators, in and of themselves provide valid grounds for sealing records in judicial proceedings related to the arbitration.  Rather, the Second Circuit affirmed based upon the particulars of the case, including that: (1) the district court had interpreted the confidentiality agreement narrowly "so that only documents in which the parties had a legitimate confidentiality interest would be sealed;"  (2) the publically available opinions of both the district court and Second Circuit discuss the underlying facts of the arbitration and "clearly indicate that the arbitrators found that defendants discriminated against DiRussa based on age;"  and (3) the arbitration award is available on Westlaw.  *Id* at 827.

U.S. Dist. LEXIS 30009 at *5 (S.D.N.Y. 2009) ("[t]he fact that arbitral proceedings in this case may have been confidential under the arbitral rules or the arbitration clause at issue does not necessitate that they be kept confidential in these proceedings.")  Although courts have recognized that "the federal policy in favor of arbitration is promoted by permitting one of the principle advantages of arbitration - confidentiality - to be achieved[,]" that policy alone is not sufficient to relieve a party of the obligation of "demonstrat[ing] why the presumption of access should be overcome" where the documents at issue in a sealing application are " ... at the heart of what the court is asked to act upon." *Global Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, Nos. 07-CV-8196 and 07-CV-8350), 2008 WL 1805459 at *2, 2008 U.S. Dist. LEXIS 32419 at *5 (S.D.N.Y. 2008) (court granting respondent's motion to reconsider its earlier sealing order and unsealing the final arbitration award in a proceeding to confirm where the petitioner had failed to demonstrate why the presumption of access should be overcome).

                **b.**        **Protection of Third-Party Goulds' Privacy Interests**

Plaintiff has failed to show that the sealing of all information and documents deemed confidential under the parties' confidentiality agreements and the arbitration confidentiality order is warranted.  Utica has, however, established its entitlement to an order directing the filing under seal of certain categories of information and documents in this action.  Utica has specifically identified three categories of information and documents it believes must be filed under seal to protect the interests of Goulds and the parties to this lawsuit.  They are: (1) the confidential information that Utica alleges was improperly disclosed by R&Q (Dkt. No. 6 at ¶ 6); (2) privileged information that Utica possesses regarding Goulds' defense of the tens of thousands of asbestos lawsuits pending against it, *id*. at ¶ 7; and (3) attorney-client and work product

privileged information relating to claims against Goulds and coverage disputes between Utica, on the one hand, and Goulds and Goulds' other insurers, on the other, that has been provided to R&Q in its role as Utica's reinsurer, *id*. at ¶ 8.

The privacy interests of innocent third-parties like Goulds "should weigh heavily in a court's balancing equation."[16]  *See TheStreet.com*, 273 F.3d at 232 (internal citation and quotation marks omitted).  Utica claims to possess privileged information regarding Goulds' defense of its underlying asbestos litigation.  There is nothing before me suggesting that information regarding Goulds' defense of the underlying asbestos claims will be an issue in this case.  If it does turn out that privileged documents relating to the Goulds' litigation must be filed, given the narrow nature of the dispute involved in this lawsuit, it seems fairly unlikely that those documents would be of interest to anyone other than those against whom Goulds is litigating the asbestos lawsuits.  In light of the harm that could come to Goulds from the public filing of privileged documents that could be used against it in its underlying asbestos litigation, Goulds' privacy rights with regard to those documents outweigh the public right of access.

      **c.**    **The Parties' Privacy Interests and Attorney-Client and Attorney Work Product Privileges**

Attorney-client privilege can also be "a compelling reason" to seal judicial records. *Lugosch*, 435 F.3 at 125.  *See also Alexandria Real Estate Equities, Inc. v. Fair*, No. 11-CV-3694, 2011 WL 6015646 at *2, 2011 U.S. Dist. LEXIS 138455 at *5-6 (S.D.N.Y. 2011)

---

[16] Protecting the privacy interests of innocent third parties constitutes a "higher value" for purposes of overcoming the qualified First Amendment right of public access to judicial records as well as a counterveiling factor for purposes of determining whether sealing is appropriate in the case of a common law right of access.  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995*)*

(attorney-client privilege has been identified as an example of a "higher value" for purposes of overcoming a qualified First Amendment right to public access to judicial records). Work product privilege has also been found to provide a basis for sealing judicial records. *See In re Check Point Software Technologies Ltd. Securities Litigation*, 03-CV-6594, 2007 WL 1827113 at *1, 2007 U.S. Dist. LEXIS 45579 at *5 (S.D.N.Y. 2007) (allowing redaction of portions of exhibits that may reveal attorney work product and filing of redacted versions).

The confidentiality agreements and order in the R&Q reinsurance dispute show that Utica took great pains to protect its privileged and confidential information, first during the R&Q audit (Dkt. No. 6-1), and later in connection with the arbitration. (Dkt. No. 6-2 and 6-4.) Common sense dictates that public disclosure of privileged information and documents provided to R&Q relating to Utica's various coverage disputes might prove harmful to its interest, since it could conceivably be used against Utica by other insurers.[17] In light of the potential harm, and because public interest in the narrow subject matter of this litigation is likely to be relatively low, Utica's privacy interests outweigh the public right of access to confidential information and documents that are covered by the attorney-client and work product privileges.[18]

### d.     Documents Filed Under Seal in the FFIC Litigation

Utica also asks that all filings that attach or reference submissions filed under seal in the FFIC Litigation be filed under seal in this case. (Dkt. No. 5.) As discussed above, this lawsuit

---

[17] The parties themselves recognized the potential harm in the October 2008 confidentiality agreement and the October 2009 confidentiality agreement entered as an order in the arbitration. (Dkt. Nos. 6-1 at 3 and 6-3 at ¶ 4.)

[18] For purposes of Utica's sealing request, the confidential information that Utica contends was improperly disclosed by R&Q shall be deemed to be covered by the attorney-client privilege and may be filed under seal in this case.

arises in large part out of disclosures made to counsel for FFIC and the Court in the FFIC Litigation.  (Dkt. Nos. 1 at ¶¶ 39-40; Dkt. No. 10 at 8; Dkt. No. 20 at ¶ 5.)  The allegedly improper disclosures were made in opposition to Utica's motion for a protective order involving privileged emails that Plaintiff contends were inadvertently produced.  (Dkt. No. 17 at 70-71.)  The FFIC protective order specifically provides for confidential treatment of documents related to that dispute and the filing of those documents under seal.  (Dkt. No. 6-5 at ¶ 6.)

Steps have already been taken to file documents in this lawsuit which have already been filed under seal in the FFIC Litigation.  Utica moved in the FFIC Litigation for permission to make a limited disclosure in this lawsuit of documents filed under seal in the privilege dispute in that action (No. 6:09-CV-853, Dkt. Nos. 100 at 1-3 and 100-1), and Magistrate Judge Lowe granted the motion. (No. 6:09-CV-853, Dkt. No. 105.)  Utica has moved in this case to file reply papers containing those documents and others relating to the FFIC Litigation privilege dispute on its pending motion for a preliminary injunction under seal.  (Dkt. Nos. 22-24.)  Given the close relationship between the claims asserted in this lawsuit and the privilege dispute in the FFIC Litigation, it is likely that the parties will find it necessary to continue to file or make reference in this lawsuit to documents that have been or will be filed under seal in the FFIC Litigation.  Denying Utica's sealing request with regard to those documents would severely undermine the FFIC protective order by making documents filed under seal in that case readily available to the public in this one.  In the Second Circuit it is considered "... presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."  *TheStreet.com*, 273 F.3d at 230.  It would be no less unfair for me to allow public access to documents that have been given judicial protection from access in a related action.

### III. CONCLUSION

For the reasons set forth herein, it is hereby **ORDERED** that Plaintiff's motion to file portions of its reply in support of its motion for a preliminary injunction under seal (Dkt. No. 24) is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion to seal confidential information (Dkt. No. 5) is **GRANTED** in part as follows:

(a) Submissions containing privileged information regarding Goulds' defense of the asbestos lawsuits pending against it, including documents covered by the attorney-client or work product privileges, shall be filed under seal in this action, with redacted copies to be filed publically;

(b) Submissions containing information relating to coverage disputes between Utica, on the one hand, and Goulds and Goulds' other insurers, on the other hand, which are covered by the attorney-client or work product privileges, including those that were disclosed to R&Q as a part of the audit process or during the course of the reinsurance arbitration, shall be filed under seal in this action, with redacted copies to be filed publically;

(c) Submissions filed under seal in the FFIC Litigation pursuant to paragraph 6 of the Stipulated Protective Order Regarding Confidential Items and Information (Dkt. No. 6-5), submissions referencing the content of documents filed under seal in the FFIC Litigation (with redacted copies to be filed publically), and documents submitted *in camera* in that litigation shall be filed under seal in this action; and

(d) Submissions filed under seal pursuant to the Court's May 21, 2012 Text Order (Dkt. Nos. 60 and 61) shall remain under seal in this action;

and that Plaintiff's motion to seal confidential information (Dkt. No. 5) is in all other respects **DENIED**.

Dated: June 12, 2012
Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge